DAVID OLIVER,     )
           )
    Petitioner,   )
           )
v.           )   No.:  3:18-CV-33-TAV-HBG
           )
DARREN SETTLES,   )
           )
    Respondent.  )

## MEMORANDUM OPINION

This is a pro se prisoner's petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 in which Petitioner challenges his conviction for rape of a child. After reviewing the relevant filings, including the state court record, the Court finds that the record establishes that Petitioner is not entitled to relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rules Governing § 2254 Cases, Rule 8(a); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the petition for habeas corpus relief will be **DENIED**, and this action will be **DISMISSED**.

## I.  BACKGROUND

In 2012, a thirteen-year-old girl reported that Petitioner had raped her the previous year. *State v. Oliver*, No. E-2013-0246-CCA-R3-CD, 2014 WL 12649795, at *1 (Tenn. Crim. App. Nov. 20, 2014) ("*Oliver I*"). In the investigation that followed, Petitioner gave an interview to police [Exhibit 5 to the state court record, DVD of Petitioner's interview with police (manually filed)]. *Id.*

During this interview, investigators told Petitioner that he would be able to go home that day four (4) times [*Id.* at 8:27–8:43; 12:46–13:35; 33:50–34:02].  While two (2) of these statements were conditioned on Petitioner telling the truth [*Id.* at 8:29–8:43; 12:46–13:22], which investigators stated they already knew [*Id.* at 34:07–34:15], investigators also at one point told Petitioner that if he wanted to leave the interview "right now," he could [*Id.* at 13:23–13:35], and that he would go home no matter what he told them [*Id.* at 33:50–34:02].

In the interview, Petitioner initially denied knowing the victim or the victim's cousin, before later admitting that he had worked with and dated the victim's cousin and spent the night at the victim's cousin's house while the victim, her cousin, and her aunt were there [*Id.* at 0:00–35:59].  However, Petitioner repeatedly denied having sex with the victim [*Id.*], even after Investigator Jeff Damewood suggested that Petitioner may not have had to force the victim to have sex with him [*Id.* at 29:40–30:18, 31:18–20].  But soon after investigators implied that the victim may have gotten pregnant from a sexual encounter with Petitioner and that this pregnancy led to the investigation of Petitioner [*Id.* at 27:05–33:40]—which was not true, *Oliver I*, 2014 WL 12649795, at *1—Petitioner confessed to raping the victim while she said no and tried push him away and to ejaculating in that encounter [*Id.* at 36–49].  *Id.*

After the interview, investigators offered Petitioner an opportunity to write the victim an apology letter but emphasized that he did not have to do so and did not otherwise suggest what he should state therein [*Id.* at 58:30–59:05].  Petitioner then wrote the victim

2

a letter apologizing and stating that he would like a DNA test for the baby and to see the baby [Doc. 14-6 p. 32].  *Id.*

Prior to his trial, Petitioner moved to suppress his confession to police, and the trial court held a hearing on that motion.  *Id.*  The evidence at the hearing showed that on the day of Petitioner's interview with police, Investigator Damewood had gone to Petitioner's parents' house, spoke to Petitioner, and asked Petitioner to come to the police station for an interview.  *Id.*  Investigator Damewood told Petitioner and his parents that he needed Petitioner to give a statement but confirmed that Petitioner would be returning home after the interview and that he did not have a warrant for Petitioner's arrest.  *Id.* at *2.  Petitioner's mother testified that after Investigator Damewood left, she tried to call Petitioner's attorney, and that she told Petitioner to ask for an attorney when he got to the police station, which Petitioner stated he intended to do.  *Id.*  Petitioner's stepfather also testified that on the way to the police station, he told Petitioner to ask for his attorney when he got there, and Petitioner agreed that he was going to do that.  *Id.*

At the police station, Investigator Damewood met Petitioner and his stepfather in the lobby and took Petitioner to an elevator.  *Id.* at *1.  According to Petitioner and his stepfather, Petitioner asked Investigator Damewood "Do you think I need my lawyer?" and Investigator Damewood responded, "That's up to you."  *Id.* at *2.  Both Petitioner and his stepfather testified that Petitioner then replied that he did want his attorney, with Petitioner's stepfather specifying that Petitioner did so as the elevator doors were closing.  *Id.*

3

Petitioner also testified that, as he and Investigator Damewood got off the elevator, he stated that he needed his lawyer present, and that he again asked for an attorney during a preliminary interview with a sex offender registration officer before Investigator Damewood began recording the interview. *Id.* at *2–3. But when the prosecutor confronted Petitioner with the possibility that his entire interview, including his conversation with the sex offender registration officer, was recorded, Petitioner stated that he could have been confused about asking for an attorney during that portion of the interview. *Id.* Petitioner did, however, maintain that he asked for an attorney several times that day, including while downstairs. *Id.*

However, Investigator Damewood testified that Petitioner never asked for an attorney. *Id.* at *1. Moreover, it was undisputed that when Petitioner got to the conference room where he gave his confession, Investigator Damewood read Petitioner his *Miranda* rights, after which Petitioner signed a waiver of those rights and initialed beside each one, including the right to an attorney [Doc. 14-6 p. 3]. *Id.* at *1–2.[1]

Petitioner testified that he went to the police station because he felt that there was a threat that he might go to jail. *Id.* at *2. He also testified that Investigator Damewood's hand was near his pistol on his side when he told Petitioner to get in the elevator, causing him to feel scared, and that he felt threatened during the interview despite being told that

---

[1] The recording of Petitioner's police interview establishes that Petitioner did not request an attorney at the time he signed his *Miranda* rights waiver despite Investigator Damewood telling him that by signing that waiver, he was agreeing that he was willing to answer questions without an attorney present [Exhibit 5 to the state court record, DVD of Petitioner's interview with police (manually filed) 0-0:23].

4

he could leave. *Id.* at *2–3. Petitioner also stated that he felt "seduced" during his interview and explained this statement by describing the clothing of one of the female investigators [Doc. 14-2 p. 50].

Based on this evidence, the trial court denied Petitioner's motion to suppress. *Id.* at *3. Specifically, the trial court found that Investigator Damewood was "'credible on what he could remember,'" and credited Investigator Damewood's statement that Petitioner did not ask for an attorney. *Id.* The trial court also found that Petitioner's parents were mostly credible but questioned whether Petitioner's stepfather heard him that he wanted an attorney in the elevator. *Id.* The trial court also pointed out that Petitioner "backped[aled]" his testimony that he had asked for an attorney in the conference room before the interview began to be recorded when confronted with the possibility that his entire conversation with investigators was recorded. *Id.* The trial court noted its concern about Petitioner's credibility and stated that even if he had requested an attorney, the request was equivocal. *Id.* Ultimately, the trial court found that Petitioner had failed to show that he requested an attorney. *Id.*

Prior to Petitioner's trial, the defense also filed a motion pursuant to Rule 412 of the Tennessee Rules of Evidence seeking permission to cross-examine the victim at trial about certain statements that she made during an interview with Childhelp, the department that responded to her rape allegation against Petitioner. *Id.* at *4. Specifically, the defense sought to question the victim about her statements that a different man had raped her when she was eleven (11) years old and she had consensual sex with a boyfriend before Petitioner

5

raped her. *Id.* The trial court granted the motion to the extent that it allowed the defense to question the victim about those events at trial to show how a child her age would have had knowledge about sexual matters at the time of her encounter with Petitioner. *Id.*

At trial, the prosecution presented testimony from the victim's aunt, the victim, and Investigator Damewood, as well as portions of the recording of Petitioner's interview with police and Petitioner's letter to the victim, among other things [Doc. 14-4 p. 19–104; Doc. 14-5 p. 7–35; Doc. 14-6 p. 32]. After the prosecution rested, the trial court informed Petitioner of his rights regarding testifying on his own behalf [Doc. 14-5 p. 43]. Petitioner told the trial court that he had spoken with counsel about his rights to testify and to remain silent and the advantages and disadvantages of each option [*Id.* at 43–46]. Petitioner chose not to testify [*Id.* at 53].

The defense then presented testimony from Petitioner's sister, who testified about, among other things, Petitioner's relationship with his niece and how they spent time together, which prompted the trial court to warn defense counsel that questions about these issues risked opening the door to admission of evidence of Petitioner's prior statutory rape conviction [Doc. 14-5 p. 80–84]. The defense also showed a portion of the victim's Childhelp interview that the trial court found was inconsistent with her trial testimony [Doc. 14-5 p. 87–90]. However, the trial court did not allow the defense to play portions of the victim's Childhelp interview regarding matters about which the victim had testified at trial she did not remember, as the trial court did not think the victim was being evasive in making those statements [Doc. 14-5 p. 54–77]. *Id.* at *5.

6

Based on the evidence presented at trial, a jury convicted Petitioner of child rape and Petitioner received a sentence of twenty-five (25) years [*Id.* at *1]. The TCCA affirmed Petitioner's conviction, *id.* at *6, and the Tennessee Supreme Court denied Petitioner's request for permission to appeal [Doc. 14-12].

Petitioner filed a pro se petition for post-conviction relief [Doc. 14-13 p. 4–20], and Petitioner's post-conviction counsel filed an amended petition asserting only that Petitioner's trial counsel was ineffective for advising him not to testify [*Id.* at 28–30].

At the hearing on Petitioner's petition for post-conviction relief, Petitioner's trial counsel testified that he did not represent Petitioner when he confessed to police. *Oliver v. State of Tennessee*, No. E2016-02244-CCA-R3-PC, 2017 WL 1496954, *1 (Tenn. Crim. App. April 25, 2017) ("*Oliver II*"). Trial counsel testified that he received a copy of the statement in discovery and went over it with Petitioner "in great detail." *Id.* at *2. Trial counsel also stated that he received a copy of Petitioner's letter of apology to the victim and a copy of the victim's Childhelp interview. *Id.* Trial counsel described his trial strategy, which included suppressing Petitioner's statement to police and attacking the victim's credibility. *Id.* However, after the trial court denied the motion to suppress Petitioner's statement, trial counsel testified that he decided to "attack the reliability of the confession by focusing on the circumstances surrounding the statement" and emphasize Petitioner's inability to handle pressure and the way in which police questioned Petitioner, as he felt like Petitioner's statement suggested that Petitioner adopted the questions in formulating his answers. *Id.*

7

According to trial counsel, Petitioner was interested in testifying and Petitioner and trial counsel talked about this issue "extensively for months" and discussed it with Petitioner's family. *Id.* Trial counsel explained that Petitioner wanted to testify to explain that his statement to police was false and coerced, and that he gave that statement due to wanting to leave the police station. *Id.* However, trial counsel did not believe that Petitioner could handle confrontational situations well, did not feel that Petitioner should testify, and advised Petitioner not to testify. *Id.* Trial counsel recognized that Petitioner likely relied on his trial counsel and family's advice in choosing not to testify. *Id.*

Nevertheless, trial counsel stated that he was prepared for the possibility that Petitioner may choose to testify and worked with him on his testimony in case he decided to testify. *Id.* Also, trial counsel noted, the trial court held a hearing where Petitioner testified that he and counsel had discussed whether he should testify at trial several times, and also had discussed his Fifth Amendment right to remain silent, his right to decide whether to testify, and the advantages and disadvantages of testifying. *Id.* But while trial counsel noted that he cross-examined one of the interrogating officers, he acknowledged that there were no other witnesses that could explain the confession besides Petitioner. *Id.*

On cross examination, trial counsel testified that it would have been difficult for Petitioner to explain the reasons behind his confession and that he was afraid that Petitioner testifying would end up hurting his case more than helping. *Id.* Trial counsel also stated that, in hindsight, he would still use the same trial strategy. *Id.*

On redirect examination, trial counsel testified that as Petitioner had a prior statutory rape conviction, he was concerned that, if he testified, Petitioner could open the door to evidence of that conviction during cross examination. *Id.* Trial counsel further stated that he conducted a mock examination of Petitioner and that, based on that exercise, he did not believe Petitioner's testimony would have made a good impression on the jury. *Id.* Trial counsel also stated he "did not think that the Petitioner was capable of effectively explaining why he confessed and apologized to the victim" but acknowledged that no other witness could testify about whether the confession and apology were truthful. *Id.* However, trial counsel noted, he had cross examined the victim about the discrepancies in her statement and testimony. *Id.*

At the post-conviction hearing, Petitioner testified that he and trial counsel discussed trial strategy a number of times, that he reviewed some of his recorded interview, and that he did not get to see a copy of his apology letter. *Id.* at *3. Petitioner also testified that he only confessed after an investigator told him that the victim had accused him of rape, and that his admissions of guilt were not true. *Id.*

Petitioner claimed that he felt pressured, confused, and frightened during his police interview, which he at least partially attributed to an assault on him by a police officer that occurred at some point prior to that interview. *Id.* He also stated that an investigator placed a hand near his gun when Petitioner did not immediately answer a question during the interview. *Id.* Petitioner further claimed that one detective told him that he could not leave the interview room until he wrote the apology letter. *Id.* Petitioner additionally stated that

9

he did not fully disclose all details about his police interview to his trial counsel, including his fear. *Id.*

Petitioner talked about whether he should testify at trial with his trial counsel, who advised him that he should not due to his low IQ and the prospect of tough questioning by the prosecution. *Id.* He did not recall participating in a mock examination with trial counsel and stated that he thought he should testify to explain his false statements to police. *Id.* Petitioner also testified that he did not spend the night at the house with the victim because he could not do so as a registered sex offender. *Id.* Petitioner acknowledged that the trial court told him that it was his decision whether to testify but stated that he decided not to because of trial counsel's advice. *Id.* On cross examination, Petitioner testified that he made the final decision about whether he should testify and that he relied on his family's advice in addition to trial counsel's advice in making his decision. *Id.* However, he stated that if trial counsel had advised him to testify, he would have. *Id.*

After this hearing, the post-conviction court denied Petitioner's petition [Doc. 14-13 p. 34–38; Doc. 14-14], and the TCCA affirmed. *Id.* at *5. The Tennessee Supreme Court denied Petitioner permission to appeal [Doc. 14-20].

Now before the Court is Petitioner's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asserts (1) several claims for ineffective assistance of trial and appellate counsel [Doc. 1 p. 5–14]; (2) a claim that the trial court erred in not suppressing his confession [*Id.* at 15–18]; (3) a claim regarding the victim's prior statement [*Id.* at 19–22]; (4) a claim for violation of his due process rights [*Id.* at 23–

10

24]; (5) a claim for violation of equal protection [*Id.* at 25–27]; (6) a claim challenging the sufficiency of the evidence to support his conviction [*Id.* at 28–32]; and (7) a claim based on the cumulative effect of all alleged errors [*Id.* at 33–38]. Respondent filed a response in opposition thereto [Doc. 17], as well as the state record [Doc. 14] and sealed portions thereof [Docs. 18, 19, 24, 25[2]]. Petitioner filed a reply [Doc. 28].

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court decided on the merits unless the state court's adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). This standard is difficult to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'" (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011))). When evaluating the evidence presented in state

---

[2]  In its order granting Respondent's motion to file these documents under seal, the Court noted that it would allow Respondent to temporarily file these documents under seal and later determine whether filing under seal was proper [Doc. 23 p. 2]. After reviewing the filings, the Court finds that they shall remain under seal, and will **DIRECT** the Clerk to seal the docket entry containing the transcript of Petitioner's post-conviction hearing [Doc. 14-14], as it contains the name of the victim without redaction. *Brown & Williamson*, 710 F.2d 1165, 1179 (6th Cir. 1983) (providing that certain privacy rights of third parties, among other things, may justify sealing court records) (citations omitted).

11

court, a federal habeas court presumes the correctness of the State court's factual findings unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

At the outset, the Court addresses the issues of exhaustion and procedural default. Then, addressing those claims that are not defaulted, the Court first discusses Petitioner's ineffective-assistance-of-counsel claims, before turning to Petitioner's claim of error arising out of the trial court's denial of Petitioner's motion to suppress his confession and lastly Petitioner's claim of error arising out of the trial court's evidentiary ruling.

### A. Exhaustion

Petitioner presented only the following claims to the TCCA: (1) the trial court erred in not suppressing his confession due to his request for an attorney [Doc. 14-7 p. 44–53]; (2) the trial court erred in limiting his counsel's ability to cross examine and impeach the victim, especially with her full interview with Childhelp [*Id.* at 54–59]; and (3) trial counsel was ineffective for advising him not to testify at trial [Doc. 14-16 p. 13–14]. Petitioner acknowledges in his petition that he did not exhaust the other claims for which he seeks § 2254 relief herein with the state courts. Nevertheless, he posits that he may still bring these claims because this default was due to the ineffective assistance of his appellate and/or post-conviction counsel. Petitioner's unexhausted claims for § 2254 relief include (1) additional claims for ineffective assistance of trial and appellate counsel [Doc. 1 p. 7–11]; (2) a new theory underlying his claim that the trial court should have suppressed his

12

confession [*Id.* at 16–18]; (3) a claim for violation of his due process rights [*Id.* at 23–24]; (4) a claim for violation of equal protection [*Id.* at 25–27]; (5) a claim challenging the sufficiency of the evidence to support his conviction [*Id.* at 28–32]; and (6) a claim alleging the cumulative effect of all errors [*Id.* at 33–38].

However, before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires the petitioner to "fairly present" each federal claim to all levels of the state appellate system by presenting the "same claim under the same theory" up to the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414, 418 (6th Cir. 2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Where a petitioner no longer "has the right under the law" of Tennessee to properly exhaust a claim, the claim is technically exhausted but procedurally defaulted. *See* 28 U.S.C. § 2254(c); *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (providing that "when a petitioner fails to present a claim in state court, but that remedy is no longer available to him, the claim is technically exhausted, yet procedurally defaulted" (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)); *see also* Tenn. Code Ann. §§ 40-30-102(a) (one-year limitation period), (c) ("one petition" rule).

"Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). Thus, a prisoner's procedural

default of a claim forecloses federal habeas review unless the petitioner shows cause to excuse his failure to comply with the procedural rule and actual prejudice from the constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

An attorney's ineffective assistance in post-conviction proceedings generally does not establish "cause" to overcome procedural default. *Id.* at 755. Where a habeas petitioner could raise a claim for trial counsel's ineffective assistance for the first time in a post-conviction petition, however, ineffective assistance of post-conviction counsel may be "cause" to excuse a procedural default of a substantial ineffective assistance of counsel claim. *Trevino v. Thaler*, 133 S.Ct. 1911, 1918–21 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012); *Wallace v. Sexton*, 570 F. App'x 443, 452–53 (6th Cir. 2014). This exception, commonly referred to as the *Martinez* exception, applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

However, *Martinez* only allows a habeas petitioner to present claims for ineffective assistance of trial counsel that he defaulted due to the ineffective assistance of his post-conviction counsel and does not excuse a petitioner's default of other types of claims. *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 714 (6th Cir. 2015). Moreover, the Supreme Court has declined to extend the *Martinez* exception to excuse a habeas petitioner's procedural default of an ineffective assistance of appellate counsel claim by asserting that this omission was due to the ineffective assistance of his post-conviction counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (declining to extend the scope of *Martinez* to include

14

procedurally defaulted claims of ineffective assistance of direct appellate counsel due to ineffectiveness of post-conviction counsel).

Thus, only Petitioner's unexhausted claims for ineffective assistance of trial counsel fall under the *Martinez* exception, and the Court will address these claims below. However, Petitioner procedurally defaulted his other claims in his § 2254 petition, specifically his claims for ineffective assistance of appellate counsel, his new theory for suppression of his confession, his claims for violations of his rights to due process and equal protection, his claim challenging the sufficiency of the evidence, and his claim for cumulative error, by failing to present them to the TCCA in his direct appeal or post-conviction petition. These claims do not fall under the *Martinez* exception and Petitioner has not presented any other cause to excuse his procedural default of those claims or prejudice resulting therefrom. Thus, the Court will not address these claims.

## B. Ineffective Assistance of Trial Counsel Claims

The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

15

errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable. Unless a defendant makes both
showings, it cannot be said that the conviction . . . resulted
from a breakdown in the adversary process that renders the
result unreliable.

*Id.* A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin
Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

As to the first prong of *Strickland*, the appropriate measure of attorney performance
is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. To
meet this prong, a petitioner must demonstrate that his counsel was so deficient that he no
longer "function[ed] as the 'counsel' guaranteed under the Sixth Amendment." *Id.* at 687.
The evaluation of the objective reasonableness of counsel's performance must be made
"from counsel's perspective at the time of the alleged error and in light of all the
circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*,
477 U.S. 365, 381 (1986).

The second prong of *Strickland* requires a claimant to show counsel's deficient
performance prejudiced the defense. "An error by counsel, even if professionally
unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the
error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a
claim for ineffective assistance of counsel to meet his burden, and if either prong is not
satisfied, the claim must be rejected. *Id.* at 687. Moreover, a habeas petitioner alleging
ineffective assistance of counsel bears a heavy burden, given the "doubly deferential"

16

review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Here, Petitioner claims eleven (11) different instances of ineffective assistance by trial counsel. He argues that counsel was ineffective for: (1) deficiently arguing that the trial court should suppress his confession, (2) not seeking funding for a second defense attorney, a second competent psychiatrist, and investigators, (3) deficiently cross-examining of the victim, (4) not interviewing the victim and other state witnesses, (5) not subpoenaing character witnesses for his trial, (6) not arguing that the evidence was insufficient to support his conviction, (7) failing to depose Petitioner under oath without cross examination, present an unsworn statement from Petitioner to explain his confession, and/or inform Petitioner of these options, (8) not requesting a lie detector test for Petitioner to prove his innocence to the jury, (9) failing to obtain Petitioner's medical, juvenile, job, and school records and files, (10) advising Petitioner not to testify, and (11) failing to present evidence of mitigating factors and/or incompetency at his sentencing hearing. The Court addresses each in turn.

### 1. Suppression

Here, Petitioner claims that his counsel ineffectively argued that the trial court should suppress his confession [Doc. 1 p. 8–9]. In support, he advances two arguments. Petitioner first argues that trial counsel did not adequately argue the issue of suppression because a credible witness testified that he invoked his right to counsel prior to his police interview [Doc. 1 p. 8]. Second, Petitioner argues that counsel was ineffective for failing

to argue that his confession resulted from coercion and was therefore involuntary and inadmissible [Doc. 1 p. 9].  The Court addresses each in turn.

### a.    Request for an Attorney

The Fifth Amendment guarantees that an individual has the right to not be "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Supreme Court has held that a suspect must be informed of his Fifth Amendment right against self-incrimination, among other rights, prior to custodial interrogation[3] by police. *Miranda v. Arizona*, 384 U.S. 436, 478–89 (1966).  Further, once a suspect requests counsel in a custodial interrogation, he may not be interrogated without counsel "unless the accused himself institutes further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).  However, volunteered statements without custodial interrogation are not subject to these safeguards.  *Id.* at 486.

Here, Petitioner asserts that trial counsel did not properly argue that the trial court should suppress his confession because a credible witness testified that he invoked his right to counsel prior to his police interview [Doc. 1 p. 8], but, as set forth above, trial counsel did seek to suppress Petitioner's confession to the police by arguing that Petitioner invoked his right to counsel prior to his police interview and presented testimony from Petitioner, his mother, and his stepfather in support of the motion to suppress [Doc. 14-1 p. 36–37, 41; Doc. 14-2 p. 8–74].  While the trial court denied that motion and found that Petitioner

---

[3]  Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

had not invoked his right to an attorney [*Id.* at 74], it did so having considered the evidence presented by Petitioner and adjudged the credibility of the witnesses [*Id.* at 67–74]. The record therefore belies Petitioner's claim that trial counsel was ineffective for failing to argue that his confession must be suppressed due to his requests for an attorney. For this reason, this claim is without merit, and Petitioner is not entitled to relief under § 2254.

### b. Coercion

Petitioner also argues that counsel was ineffective for failing to argue that his confession was involuntary and inadmissible because it resulted from coercion [Doc. 1 p. 9]. Involuntary confessions may not be admitted due to the Fifth Amendment privilege against compulsory self-incrimination. *Colorado v. Connelly*, 479 U.S. 157, 163–64 (1986). Moreover, the State of Tennessee's Constitution provides broader protection of individual rights regarding the voluntariness of a confession than the United States Constitution. *State v. Phillips*, 30 S.W.3d 372, 376–77 (Tenn. Crim. App. 2000) (citing *State v. Stephenson,* 878 S.W.2d 530, 544 (Tenn. 1994)). Tennessee courts consider the totality of the circumstances to determine whether a confession is voluntary, but for a confession to be adjudged involuntary under Tennessee law, coercive police activity that overbears a suspect's will is required. *State v. Downey*, 259 S.W.3d 723, 733 (Tenn. 2008); *State v. Smith*, 933 S.W.2d 450, 456 (Tenn. 1996).

Petitioner has not established that trial counsel was deficient for failing to argue that the confession should have been suppressed as involuntary due to coercion or that this omission prejudiced Petitioner's case. Specifically, while he generally alleges that he

19

signed the waiver of his *Miranda* rights due to coercion, Petitioner does not set forth any factual allegations or evidence to support this allegation. Also, while Petitioner testified at the hearing on his motion to suppress his confession that investigators' hands went near their weapons on their side before and during his police interview, nothing in the record supports a finding that this conduct was so coercive as to overcome Petitioner's will to resist and force him to confess.

Further, as set forth above, the record establishes that Petitioner confessed to investigators approximately thirty-six (36) minutes into his police interview and that, prior to that confession, investigators had told Petitioner at least four (4) times that he would be leaving the police station that day. While two (2) of these statements were conditioned on Petitioner telling the truth, which investigators stated they knew, Petitioner has not set forth evidence that these statements were so coercive as to overbear his will, and the recording of the interview does not support such a finding. Additionally, while Petitioner states that, at the time he confessed, he had known mental instabilities, comprehension difficulties, fear of the police, and could not read and write well, he did not present any evidence of these conditions or their severity. Moreover, as Respondent points out, it is undisputed that Petitioner had the literacy skills to sign and initial the *Miranda* waiver form prior to his interview, and to write the victim the apology letter after the interview. While Petitioner also states that trial counsel should have asked the court to suppress his confession by arguing that he had a fear of police due to a prior police assault on him and a tendency to agree in order to avoid confrontations, these arguments do not support the allegation that

20

in this instance police coerced Petitioner in any way, which is required to suppress an involuntary confession under Tennessee law. *See Downey*, 259 S.W.3d at 733.

In other words, Petitioner has not established that an argument for suppression of his confession as involuntary would have had any merit, and counsel cannot be constitutionally ineffective for failing to raise a meritless argument. *See, e.g., Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999). Thus, Petitioner is not entitled to relief under § 2254 for this claim.

### 2. Funding for Second Counsel, Psychiatrist, Experts, and Investigators

Petitioner also argues that counsel was ineffective for not seeking funding for a second defense attorney who had more experience with trials like his, a second competent psychiatrist, and investigators [Doc. 1 p. 9]. However, the record establishes that, at the time of Petitioner's trial, Petitioner's counsel had been a public defender for sixteen (16) years, had practiced law for more than thirty (30) years, and had tried between 150 and 200 cases [Doc. 14-14 p. 28–29]. Moreover, Petitioner has not set forth any evidence that additional counsel, psychiatrist, or investigation would have changed the result in his case, and the record does not support such a finding. Thus, Petitioner is not entitled to relief under § 2254 for this claim.

### 3. Cross Examination of Victim

Petitioner also asserts that counsel was inexperienced and unprepared for his cross examination of the victim, and that the TCCA found that counsel was ineffective in that cross examination [Doc. 1 p. 9, 11, 22]. Specifically, Petitioner asserts that counsel was

unable to effectively cross examine the victim regarding her prior inconsistent statements and two (2) prior sexual encounters despite having had time to prepare [*Id.* at 9–10]. However, the record does not support these assertions.

During her direct examination, in response to a question about her sexual experience prior to her encounter with Petitioner, the victim admitted to a prior consensual sexual experience, but did not mention any prior rape [Doc. 14-4 p. 47–48]. The victim also testified on direct examination that she "kept screaming" for Petitioner to stop during his rape of her [*Id.* at 44], but also that she was "telling" and "asking" Petitioner to stop during this incident [*Id.* at 44–46], and that while she was trying to wake others up during the encounter, she did not scream [*Id.* at 49].

In his cross examination of the victim, Petitioner's trial counsel first brought up a number of statements from the victim's Childhelp statement, specifically her problems with school, friends, and family [*Id.* at 51–58], and during that questioning also asked the victim who she had initially told that Petitioner had raped her [*Id.* at 55]. Counsel then asked the victim a number of questions about whether she had previously been raped while she was drinking alcohol, and the victim stated that she had previously been raped by another man and explained that she had not mentioned it in response to the direct examination questions about her prior sexual because she did not think it was necessary [*Id.* at 58–63].

Counsel next asked the victim about her encounter with Petitioner at her aunt's house [*Id.* at 63–81]. In response to this line of questioning, the victim stated that she did

22

not remember some details of that incident [*Id.*].  Counsel specifically asked the victim questions about whether she had yelled or screamed during that incident [*Id.* at 69].  The victim at one point stated that she did not yell during the rape [*Id.*].  Then she testified that she did scream during the rape but did not remember when [*Id.* at 76–77].  However, when Petitioner's counsel sought to question the victim about whether she remembered a statement she made in her Childhelp interview that she "about screamed" during Petitioner's rape and that Petitioner stopped the act at that point, the victim stated that she did not remember telling the person who interviewed her from Childhelp anything she was not telling the court [*Id.* at 78–80].

The Court finds that this cross examination was not deficient.  Trial counsel effectively impeached the victim on the issue of whether she screamed or yelled during her encounter with Petitioner, and reasonably stopped asking the victim about what she said in her Childhelp in her interview when the victim stated that she did not remember anything about the incident with Petitioner other than what she was telling the court.  Given this response, continuing to question the minor victim about her memory of the Childhelp statement likely would have been more prejudicial than helpful to Petitioner's defense.

Further, Petitioner's trial counsel was seemingly prepared to and did effectively question the victim regarding her prior statement about to whom she first reported being raped by Petitioner raping her [Doc. 14-5 p. 87–90].  While Petitioner suggests that the victim had other prior statements that were inconsistent with her trial testimony about which trial counsel did not question her and/or present evidence, Petitioner does not

23

specifically identify any such statements or set forth any facts to support a finding that this omission prejudiced him.

Further, Petitioner's claims regarding the findings of the TCCA with respect to trial counsel's performance cross-examining the victim [Doc. 1 p. 11] mischaracterize that court's opinion. In its opinion affirming Petitioner's convictions, the TCCA found that the trial court's ruling that Petitioner's counsel could not introduce certain portions of the victim's Childhelp statement as evidence was correct under Tennessee law, specifically Rule 613(b) of the Tennessee Rules of Evidence, because counsel had not first given the victim the opportunity to "admit, deny, or explain her prior inconsistent statements," despite the trial court allowing him to do so. *Oliver I*, 2014 WL 12649795, at *5. This is an accurate statement of the law in support of the TCCA's finding that the trial court did not err in limiting the cross examination of the victim, *id.*, rather than a finding of any deficiency on the part of Petitioner's counsel. Moreover, as the Court has already noted, counsel was not ineffective for choosing not to continue to question the child victim about her Childhelp statement after she told him that she did not remember anything about her encounter with Petitioner that she was not telling the court, as further pushing that line of questioning could have been prejudicial, rather than helpful, to Petitioner's case.

As such, Petitioner has not established that he is entitled to relief under §2254 for this claim.

### 4. Interview of the Victim

Petitioner generally alleges that counsel was ineffective for not interviewing the victim and other state witnesses [Doc. 1 p. 10]. However, he does not allege that any prejudice resulted from counsel not doing so, nor is any such prejudice evident from the record [*Id.*]. Thus, Petitioner has failed to establish that he is entitled to relief under § 2254 for this claim.

### 5. Character Witnesses

Petitioner also alleges that counsel was deficient for not subpoenaing character witnesses for his trial [Doc. 1 p. 10]. However, he does not state what evidence these witnesses would have presented in his petition [*See id.*]. Moreover, while Petitioner argues in his reply that such witnesses could have presented evidence of his mental instabilities [Doc. 28 p. 4], he did not make that argument in his petition and has not presented any such evidence from which the Court could find that his counsel's failure to present such witnesses was deficient.

Petitioner also argues in his reply that such witnesses could have presented evidence of his trustworthiness around children, and that as these witnesses did not know about his prior convictions, there was no concern that they could testify about those [*Id.*]. However, as Respondent points out, if Petitioner's defense had attempted to present character witnesses for such a trait, the record establishes that the trial court would have allowed the prosecution to cross examine those witnesses regarding Petitioner's prior conviction for

statutory rape pursuant to Rule 405(a) of the Tennessee Rules of Evidence.[4]  Specifically, the trial court at one point warned Petitioner's trial counsel that his direct examination of Petitioner's sister regarding Petitioner's relationship with his niece and their activities together were creating a risk that she would respond in a manner that would allow Petitioner's prior statutory rape conviction to come into evidence [Doc. 14-5 p. 80–84]. Thus, it is apparent that not presenting character witnesses for Petitioner's trustworthiness around children was not deficient performance by counsel.

As such, Petitioner is not entitled to relief under § 2254 for this claim.

### 6.    Failure to Challenge Sufficiency of Evidence

Petitioner also argues that trial counsel was ineffective for not arguing that the evidence was insufficient to support his conviction [Doc. 1 p. 10].   However, as Respondent points out, Petitioner's counsel did motion for a judgment of acquittal at the

---

[4] Rule 405(a) of the Tennessee Rules of Evidence provides as follows:

> (a) Reputation or Opinion.  In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. After application to the court, inquiry on cross-examination is allowable into relevant specific instances of conduct. The conditions which must be satisfied before allowing inquiry on cross-examination about specific instances of conduct are:
>
> (1) The court upon request must hold a hearing outside the jury's presence,
> (2) The court must determine that a reasonable factual basis exists for the inquiry, and
> (3) The court must determine that the probative value of a specific instance of conduct on the character witness's credibility outweighs its prejudicial effect on substantive issues.

end of the prosecution's proof, which the trial court denied [Doc. 14-5 p. 41–43]. A motion for acquittal is substantively similar to a motion challenging the sufficiency of evidence under Tennessee law, as it also tests "the legal sufficiency of the evidence." *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). Thus, Petitioner cannot show that any prejudice resulted from counsel failing to also file a motion challenging the sufficiency of the evidence.

Moreover, the jury found Petitioner guilty of rape of a child, and a judge will not overturn a jury verdict in Tennessee unless there are inaccuracies or inconsistencies that "are so improbable or unsatisfactory as to create a reasonable doubt of the [defendant's] guilt." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Petitioner has not cited any such inaccuracies or inconsistencies, and none are apparent from the record. To the contrary, the evidence presented at trial, especially the victim's testimony, Petitioner's confession, and Petitioner's letter of apology to the victim, was more than sufficient to allow a reasonable juror to find that Petitioner guilty of rape of a child. Tenn. Code Ann. § 39-13-522(a) (2012) (defining rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by the victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age"); Tenn. Code Ann. § 39-13-501(7) (providing that sexual intercourse is sexual penetration); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that held that evidence is sufficient to sustain a conviction if, viewing it in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt). Again, counsel cannot be

27

constitutionally ineffective for failing to raise a meritless argument. *See, e.g., Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

Thus, Petitioner is not entitled to relief under § 2254 for this claim.

### 7. Failure to Use Deposition/Unsworn Statement

Petitioner also asserts that counsel was ineffective for not deposing Petitioner under oath without cross examination, presenting an unsworn statement from Petitioner to explain his confession, and/or informing Petitioner of these options, suggesting that counsel may not have known about these options [Doc. 1 p. 10–11[5]]. Petitioner relies on *State ex rel. Barnes v. Rose*, 637 S.W.2d 459, 460 (Tenn. 1982) to support this claim [*Id.* at 10]. In *Barnes*, the Tennessee Supreme Court held that a post-conviction petitioner's "right to appear and testify applies only to a petitioner who is in the actual custody of Tennessee authorities and subject to the orders of Tennessee courts," and therefore found that the state post-conviction court did not err by not bringing the petitioner, who was incarcerated in Kentucky, to appear and testify and instead allowing the Kentucky prisoner to submit a sworn statement in support of his post-conviction petition. *Id.*

However, *Barnes* does not support the assertion that Petitioner's counsel could have presented an unsworn statement from Petitioner or a deposition without cross examination of Petitioner in his criminal trial. And Petitioner has not cited any other case or law supportive of that assertion. Respondent, on the other hand, has cited a case in which the

---

[5] Petitioner presents this claim in different forms and separate paragraphs and pages his petition [Doc. 1 p. 10–11]. However, the Court construes these paragraphs together to set forth this general claim.

28

Tennessee Supreme Court found that while a defendant has a constitutional right to testify, he does not have a right to submit an unsworn statement, at least in part due to the prosecution's interest in having a fair trial. *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976). In his reply, Petitioner acknowledges that his trial counsel may not have been able to present a deposition without cross examination and/or an unsworn statement at his trial under Tennessee law, but argues that trial counsel still should have presented something like this to the trial court due to the "extreme circumstances" of his case [Doc. 28 p. 5]. Petitioner offers no authority supportive of his argument in this regard either.

Ultimately, because Petitioner has not met his burden to establish that counsel could have presented an unsworn statement and/or a deposition without cross examination at trial, he has failed to establish that counsel's failure to do so was deficient or that any such deficiency prejudiced him. Thus, he is not entitled to relief under § 2254 for this claim.

### 8. Failure to Request Lie Detector Test

Petitioner also alleges that counsel was ineffective for not requesting a lie detector test for Petitioner to prove his innocence to the jury [Doc. 1 p. 10]. However, as Respondent correctly points out, "polygraph evidence is inadmissible" in Tennessee. *State v. Sexton*, 368 S.W.3d 371, 409 (Tenn. 2012). Thus, Petitioner has not shown any deficiency of counsel or any prejudice to him from this omission is not entitled to relief under § 2254 for this claim.

29

### 9. Failure to Obtain Records

Petitioner also alleges that counsel was ineffective for failing to obtain his medical, juvenile, job, and school records and files [*Id.*]. However, Petitioner does not indicate what specific information such records contain or how that information would have aided his defense. As such, he has not set forth any argument or evidence supporting a finding that any of these records or files would have changed the result in this case. Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### 10. Advising Petitioner Not to Testify

Petitioner also alleges that counsel was ineffective for advising Petitioner not to testify [*Id.*]. As set forth above, this is the only ineffective assistance of counsel claim that Petitioner exhausted with the TCCA, which noted that Petitioner decided not to testify and found that Petitioner had not established that trial counsel was ineffective with regard to his strategic decision to advise Petitioner not to do so. *Oliver II*, 2017 WL 1496954, at *5.

Petitioner has not met his burden to establish that this was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. An attorney's informed choice of strategy is entitled to a presumption that counsel exercised reasonable professional judgment. *See Strickland*, 466 U.S. at 690–91 (holding that counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (holding that "strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth

30

Amendment violation.").  The record establishes that Petitioner's trial counsel made an reasonable strategic choice to advise Petitioner not to testify after considering various factors, including Petitioner's admitted tendency to agree with others to avoid confrontation and the possibility that Petitioner would make a statement that would open the door to evidence of his prior conviction for statutory rape.  Thus, counsel reasonably believed that having Petitioner testify might be more harmful than helpful to Petitioner's case.  Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### 11. Failure to Present Mitigating Factors or Evidence of Incompetency at Sentencing Hearing

Petitioner also argues that counsel was ineffective for failing to present evidence of mitigating factors and/or incompetency at his sentencing hearing [Doc. 1 p. 10–11]. However, Petitioner has not presented any such evidence, nor has he alleged, much less demonstrated, that any such evidence would have changed the result of his case.  To the contrary, as Respondent points out, the record establishes that Tennessee law required a twenty-five-year sentence for Petitioner's conviction at the time of that conviction, but that counsel still told the trial court at sentencing that Petitioner was a victim of sexual abuse as a child, which the trial court stated it would have considered if he had not been subject to the mandatory twenty-five-year sentence [Doc. 14-5 p. 123–24].  As such, Petitioner is not entitled to relief under § 2254 for this claim.

### C. Suppression of Confession

Petitioner next asserts that the trial court erred in not suppressing his confession to police [Doc. 1 p. 16–18].  As set forth above, Petitioner presented this claim to the TCCA

31

under the theory that the trial court should have suppressed his confession because he invoked his Sixth Amendment right to counsel [Doc. 14-7 p. 55–59]. Because this is the only theory in support of this claim Petitioner properly exhausted, it is the only theory that the Court will address.

The TCCA found that Petitioner's claim that the trial court erred in not suppressing his confession because of his request for counsel had no merit because Petitioner was not charged with a crime at the time of his police interview. *Oliver I*, 2014 WL 12649795, at *3. The TCCA held that "even if [Petitioner's] interview could be considered a custodial interrogation, the trial court discredited testimony by [Petitioner] and his stepfather that he unequivocally asked for counsel and accredited Investigator Damewood's testimony that he did not" and therefore denied Petitioner relief for this claim. *Id.*

Petitioner has not established that this was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. Rather, the TCCA reasonably found that, even if Petitioner's police interview could be considered a custodial interrogation, the trial court found that Petitioner had not requested an attorney based on the evidence presented, and in doing so noted its concerns about the credibility of the witnesses who testified that Petitioner had done so. Habeas courts defer to trial court credibility findings, as the trial court is in the best position to determine witness credibility. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (holding that federal habeas courts do not have "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

32

Thus, Petitioner is not entitled to relief under § 2254 for this claim.

## D.     Victim's Prior Statement

Petitioner next claims that the trial court erred in not allowing his counsel to cross examine and impeach the victim with her entire statement to Childhelp [Doc. 1 p. 20–22]. The TCCA found that this claim was without merit, noting that the trial court allowed  trial counsel to question the victim about her problems at school and with family that she had disclosed in her Childhelp statement, as well as her prior sexual experiences, which the Court allowed after holding a hearing to examine the relevance of such testimony under Rule 412 of the Tennessee Rules of Evidence.  *Oliver I*, 2014 WL 12649795, at *4–6.  The TCCA also pointed out that the trial court had allowed trial counsel to cross examine the victim with any prior statements from her Childhelp interview that related to her encounter with Petitioner and were inconsistent with her trial testimony in accordance with Rule 613(b) of the Tennessee Rules of Evidence.  *Id.*

Petitioner has not established that this was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented.  "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)); *see also Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004).  "[P]resenting relevant evidence is integral to that right."  *Baze*, 371 F.3d at 323 (citing *Taylor v. Illinois*, 484 U.S. 400, 408–09 (1988)).  However, "'[s]tates have broad authority to promulgate rules that exclude evidence so long as they are not arbitrary or

disproportionate to purposes they are designed to serve.'" *Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). "[T]he Supreme Court has 'found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.'" *Spisak v. Mitchell*, 465 F.3d 684, 692 (6th Cir. 2006) (quoting *Scheffer*, 523 U.S. at 308).

Accordingly, a claim challenging a ruling regarding admissibility of evidence or error in state law does not rise to a level of constitutional magnitude unless it denied the petitioner a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). In determining whether a trial court's evidentiary ruling did so, a district court should consider whether the evidence at issue was "critical" to the case, "tend[ed] to exculpate" the petitioner, and bears "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994).

Nothing in the record suggests that the trial court's decision not to allow the defense the introduce the entirety of the victim's Childhelp statement denied Petitioner a fundamentally fair trial. The trial court allowed the defense to question the victim about the prior sexual incidents she had described in the Childhelp interview to show her knowledge of sexual matters at the time of the encounter with Petitioner. Also, as set forth above, in his cross examination of the victim, Petitioner's counsel also elicited testimony from the victim about her problems with her family, friends, and at school from that statement [Doc. 14-4 p. 51–63], and effectively cross examined the victim as to her relevant prior inconsistent statements.

34

Nothing in the victim's statement exculpated Petitioner [Doc. 38 p. 5–28]. Moreover, while Petitioner alleges that the victim's Childhelp statement would have made the jury question the victim's credibility with regard to her testimony at trial that she did not know or remember details about her encounter with Petitioner, nothing in the record suggests that the omission of any such portions of the victim's statement from the evidence at trial was so egregious that it violated Petitioner's right to a fair trial.

Thus, Petitioner is not entitled to relief under § 2254 for this claim.

## IV.    CONCLUSION

For the reasons set forth above, the petition for habeas corpus relief under § 2254 will be **DENIED** and this action will be **DISMISSED**.   Also, the Clerk will be **DIRECTED** seal the docket entry containing the transcript of Petitioner's post-conviction hearing [Doc. 14-14].

## V.    CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal.   Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2).   Where the Court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right.   *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529

35

U.S. at 484. When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right for his ineffective assistance of counsel, suppression of confession, or evidentiary ruling claims such that they would be adequate to deserve further review. Moreover, jurists of reason would not disagree with the Court's finding that Petitioner procedurally defaulted the claims that he did not present to the TCCA. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

36